IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 12-04043-01-CR-C-BP |
| **CHRISTOPHER CURTIS KELLEY**, | |
| Defendant. | |

## MOTION FOR UPWARD DEPARTURE, OR IN THE ALTERNATIVE, FOR AN UPWARD VARIANCE FROM A GUIDELINES RANGE SENTENCE

COMES NOW the United States of America, by and through Tammy Dickinson, the United States Attorney for the Western District of Missouri, and moves for an upward departure from the Guidelines range, or in the alternative, for an upward variance. In support of its motion, the Government states as follows:

After trial by jury, the Defendant was found guilty of two counts of arson in violation of 18 U.S.C. § 844(i). The presentence investigation report ("PSR") recommends a Base Offense Level of 24 and a 2-level increase based on a multiple count adjustment (U.S.S.G. § 3D1.4). With a total offense level of 26 and a Criminal History Category of I, the Defendant's recommended Guidelines range is 63 to 78 months. A sentence within the Guidelines range is insufficient because such sentence fails to account for certain aggravating circumstances surrounding the commission of these offenses that were not considered in determining the Guidelines range. As a consequence, an upward departure from the Guidelines range is warranted. In the alternative, the sentencing factors in this case warrant an upward variance from the Guidelines range.

In the early morning hours of May 8, 2011, the Defendant unlawfully entered a classroom on the Stephens College campus, where he started a fire in the corner of the classroom, then stole a computer before exiting the classroom. The building sprinkler system malfunctioned; however, firefighters quickly responded to the alarm and extinguished the fire before the entire structure burned.

Months later, in the early morning hours of September 10, 2011, the Defendant entered the Ellis Library on the University of Missouri-Columbia campus, obtained a metal pipe and destroyed computers, surveillance cameras, and other property. He also started numerous fires throughout an area on the first floor of the Library. Fortunately, an alarm activated and a sprinkler system was engaged. Firefighters were quickly dispatched and the fire was suppressed; however, smoke and water damage resulting from the sprinkler system was extensive. While in the Library, the Defendant defecated and urinated on a work table on the fourth floor. On the first floor, he left his calling card, a note proclaiming, "Welcome the Bunghole, we got fun and games."

On September 10, 2011, mere hours before the Ellis Library fires, the Defendant attended a party at a residence at 1411 Windsor, a few blocks from the Library. During the evening, Keaton Smith, the host, gave the Defendant a movie poster the Defendant had been admiring. Sometime later, Smith noticed that a vacant residence located at 1407 Windsor was on fire. Smith went down to look at the fire, and observed that the movie poster he had given the Defendant was sitting on the front lawn of the burning house. Smith then saw the Defendant approach. When Smith asked where he had been, the Defendant claimed that he had gone to get some beer. Smith noted that there was plenty of beer in the refrigerator and that the Defendant

had not returned with any beer.  The burned house was vacant, and had no electrical or gas service connected to it.  An arson investigator determined that the fire had been intentionally set.

The circumstances of these offenses establish that the Defendant is a serial arsonist who committed these crimes simply for the thrill of it.  Moreover, he targeted buildings located on college campuses - educational institutions that serve thousands of students as well as the community at large.  Because of the unique nature of these buildings, the extensive damage caused by the Defendant, the disruption of government-related functions, and his responsibility for additional offenses, an upward departure from the Guidelines range is warranted.  Alternatively, these circumstances warrant an upward variance from the Guidelines range.

Under U.S.S.G. § 5K2.0, the sentencing court may depart from the applicable Guidelines range if "(A) in the case of offenses other than child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance; . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described."

**Property Damage or Loss**

Because of the extensive loss resulting from the fires, an upward departure pursuant to U.S.S.G. § 5K2.5, "Property Damage or Loss," is warranted.  Section 5K2.5 provides, "If the offense caused property damage or loss not taken into account within the guidelines, the court may increase the sentence above the authorized guideline range.  The extent of the increase ordinarily should depend on the extent to which the harm was intended or knowingly risked and

3

on the extent to which the harm to property is more serious than other harm caused or risked by the conduct relevant to the offense of conviction."

Damages to the Library were estimated to be between $750,000 and $1,000,000; thus far, cleanup costs alone have amounted to approximately $531,294, and property loss amounts are still being determined. Damages to the Audrey Webb Child Center on the Stephens College campus amounted to $54,819.

In addition, the Ellis Library building houses the Missouri State Historical Society, a quasi-government agency, which serves as the repository for books, maps and other documents with historical importance. That area of the Library suffered extensive water damage as a result of the fires. Property damage to that area of the Library was separately estimated to be between $60,000 and $75,000.

### Disruption of a Governmental Function

U.S.S.G. § 5K2.7 provides, "If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected."

In addition to housing the University library, the Ellis Library building also houses the State Historical Society of Missouri ("the Society"), which was created by statute to serve as a trustee for the State of Missouri. The duties of the Society, as set forth in Mo. Rev. Stat. § 183.020, are related to the collection of books, maps and other papers and materials for display, publication and study. Although a private corporation, the Society is publicly funded. As a result of the Library arson on September 10, 2011, the Society was completely closed to the

4

public for three days following the fires. Society employees put in thousands of hours packing, cleaning, moving and rearranging work space, as the Society was renovated. Approximately 45 members of the public were unable to conduct research, and many individuals who had traveled to conduct research were turned away. Five staff members, whose desks and computers were water-damaged, had to pack up their work areas and move across campus to be housed in temporary work space for approximately four months. Additional staff members had to be relocated for several months due to the damage. Tens of thousands of journals and periodicals had to be boxed up and relocated because of renovations required from the water damage, and countless staff hours were expended drying original, primary-source documents. Each page/sheet had to be individually dried with blotting paper to save the documents and prevent the formation of mold. Approximately 1,000 man hours were spend taking down, repairing and replacing the art/exhibit panels that were in the corridor gallery.

The Ellis Library also operates a federal documents repository. Due to the fire caused by the Defendant, this program suffered major disruption. Directors of other libraries that were participants in the program had to sign memorandums of understanding indicating they were prepared to hold the materials in compliance with federal laws for the depository collection.

Ellis Library is the principal library of the University of Missouri, a state university that receives substantial state funding. As a result of the fire caused by the Defendant, university faculty, staff, students, and the public in general suffered a major disruption in services. Employees lost personal possessions and were displaced while repairs were made. Users were denied access and services for a total of 43 lost hours. Reference services were unavailable for 35 hours. International student instruction classes were cancelled. Library staff spent numerous

5

hours moving bottom shelves of reference books away from damaged and wet floors. Floor plans had to be redesigned to comply with ADA, which required finding other libraries to take certain collections. As a result, the Catalog Department had to remove the records, and the cataloging staff had difficulty pulling and moving books in their area where floors were damaged. Reference staff had to be kept up to date on the changing locations of documents. The shelving department staff helped move books in the days following the fire, and a month later as well. Hundreds of boxes were needed to pack up the federal documents that were moved out of the Library. As shelving was dismantled and reconstructed, there was loud banging for months, to the extent that ear plugs were offered to those affected by the noise. There was a significant psychological and emotional toll on the Library staff as well.

### Other Offenses

Under U.S.S.G § 5K2.21, "The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case a part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range." In the instant case, the Defendant was involved in an arson that was not charged, and was not considered in determining the Defendant's Guidelines range.

As discussed earlier, in addition to the offenses for which the Defendant was convicted, he was also responsible for the fire that occurred at 1411 Windsor the same morning as the Library fire. The Defendant attended a party at a nearby residence, and when the host of the party, Keaton Smith, walked over to the fire at 1411 Windsor, he observed a poster that Smith had earlier given the Defendant sitting in the front yard of the burning residence. The Defendant

6

also approached and claimed that he had left to obtain beer; however, he possessed no beer and there was ample beer in the refrigerator at the party. Fire investigators determined that the fire at 1411 Windsor had been intentionally set, based on the presence of pour patterns on the flooring inside the residence. Clearly, the fact that this fire occurred within hours of the fire at the Library was no mere coincidence. The circumstances clearly establish that the Defendant was responsible for starting the residential fire at 1411 Windsor. This conduct was not a factor in determining the Defendant's Sentencing Guidelines in this case, and constitutes a basis for an upward departure.

An upward departure is also warranted based on the nature of the buildings targeted. Ellis Library is the primary library facility on the University of Missouri campus, and provides resources and services to thousands of students and faculty. Through its inter-loan library program, it services libraries throughout the world. The Missouri State Historical Society houses priceless historical documents, and is a resource for historians and researchers across the country.

The importance of a library is clear. Libraries are cornerstones of democracy.[1] President Franklin D. Roosevelt observed that, "Libraries are . . . essential to the functioning of a democratic society; . . . libraries are the great symbols of the freedom of the mind." Sidney Ditzion, *Arsenals of a Democratic Culture*, (Chicago, ALA: 1957) p. v. The Defendant's

---

[1] *See* Colleen Alstad & Ann Curry, *Public Space, Public Discourse, and Public Libraries*, LIBRES 13(1) (March), http://libres.curtin.edu.au/libres13n1/pub_space.htm; Nancy Kranich, *Libraries and Strong Democracy: Moving from an Informed to a Participatory 21st Century Citizenry*, Indiana Libraries, Vol 32, No 1 (2013), http://journals.iupui.edu/index.php/IndianaLibraries/article/view/4228.

targeting of a library, especially a University library, makes this a particularly aggravated offense and warrants a sentence greater that that specified under the recommended Guidelines range.

Likewise, the Audrey Webb Learning Center on the Stephens College campus serves a critical function. It is an educational facility, providing a laboratory to train students to become educators themselves.

The unique nature and purpose of the buildings targeted by the Defendant are atypical of the usual arson case, which involves an arson committed for profit. The instant offenses targeted institutions of higher learning, and were committed simply for the thrill of destroying property. An upward departure is warranted.

## Upward Variance and Section 3553(a) Factors

In *United States v. Kendall*, 446 F.3d 782, 784 (8th Cir. 2006), the appellate court held that the sentencing court may vary upwards under § 3553(a) without determining that an upward departure is warranted.

In the instant case a sentence higher than the Guidelines range is warranted, based on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). The nature and circumstances of the offenses committed by the Defendant justify a greater sentence. As discussed, the extent of the property damage, the disruption to the University students, faculty and community, and the unique nature of the buildings targeted warrant a sentence in excess of the recommended Guidelines range in order to adequately punish the Defendant's conduct.

8

Respectfully submitted,

**Tammy Dickinson**
United States Attorney

By            /S/

**Jim Lynn**
Assistant United States Attorney
Missouri Bar No. 32140

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on January 9, 2014, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

/S/
**Jim Lynn**
Assistant United States Attorney

9